24-1413 Jonathan Lindsey et al. versus Gretchen Whitmer et al. Argument not to exceed 15 minutes per side. Mr. Cardall, you may proceed. Good morning, Chief Judge Sutton, Judge Murphy, and Judge Bush. May it please the court, my 11 clients are Michigan state legislators who seek to reverse the lower court's dismissal based on lack of Article 3 standing as individual state legislators. The consequence of the lower court decision is the merits of an election clause legislative usurpation claim has not been adjudicated. Unlike Arizona and North Carolina, where the state legislature sued in the Arizona redistricting case of Morby Harper, the Michigan state legislature has not sued after the 2018 and 2022 elections. So here the legislators believe that these big laws, the election clause, Michigan State Constitution, Article 12, Section 2, are being violated by big public officials. And often courts, federal and state courts, prosecute and litigate little people violating little laws. So we need to correct this situation. On the standing issue, there are two preliminary points. Standing often turns on the nature and source of claims. Also, weakness on the merits does not predetermine the issue of standing. We agree with the New York Court of Appeals in Pataki, there are three types of individual state legislator standing claims. First, political losers. There's no standing there. Second, vote nullification recognized by the U.S. Supreme Court in Why isn't your client a political loser here? Because are you alleging any law that's actually been passed by the state legislature that would contravene any of these initiatives that you're challenging? No, it's more in the nature of a legislative usurpation claim. That is the third category recognized under Pataki. And there are a number of state Supreme Court cases where that's been But I mean, don't you have to have an allegation here of some law that the legislature has the votes to pass, at least, that's being thwarted by these initiatives that you're challenging? Not for a legislative usurpation claim. In fact, in the Arizona redistricting case, the U.S. Supreme Court relied on Coleman v. McCarthy to find legislator standing. But in that case, they wanted to certify the, or the question was what, whether the constitutional amendment would be ratified by the state in Coleman, correct? Wasn't that the issue? And so it involved a 50-50 split in the legislature. That's right. The Arizona redistricting case, relying on Coleman, found in a case regarding Proposition 106. Wasn't that the whole legislature behind it? That, right, that was my point in my second sentence, was the Arizona state legislature brought that claim. It was just, I gotta say, I'm not understanding what you're talking about. So leave Pataki to the side. It's not helping. I thought the point of Judge Bush's question was, help us distinguish why you're not just bringing claims on behalf of legislative losers. I just, in common sense terms, why, I thought the line here was personal, institutional, you know, how do you fit your case into the existing precedence, where you either have a 2020 split or the whole legislature behind it. Yeah, I was trying to do that as best I could. Okay, well do it. Do it, try again. But I don't think Pataki's helping you. Okay. In state law standing, the states are all over the map on standing. So I'd be very careful about using state standing. Do what you want, but I'm just... I was just listing out three categories to help you think about it. Okay. Political losers, vote nullification, and you're... I'm just having a hard time seeing they're not political losers, because I would think you would have a majority of the legislature backing this lawsuit if they were winners. It sounds like they're losers because there's only like a handful of them, not a majority of the legislature bringing this lawsuit. Well, a legislature could bring a lawsuit like in Arizona, North Carolina, but in Michigan, maybe the legislators agree with the outcome of the constitution. We've approached the legislature. They won't pass a resolution. That's losing, right? That's a loss. That's a different kind of losing, though. It's losing on a resolution, and there is... If you're right about your theory of usurpation or however you want to pitch this, then it would have to be the case that even one legislator could bring one of these claims and have standing. The legislature, right? One legislator. A single legislator, under your theory of usurpation, would seem to be allowed to do this. Right, and I'm not... I guess the response is that I'm the first one to have ever thought this way, but here in the Pataki case, I'll read a quote. Just clarify for me, because I'm not remembering Pataki. Is Pataki under the New York Constitution standing, or is it federal standing? Well, I understand the distinction. I'm just... I'm asking you, which is Pataki? It's about state standing. Okay, so you heard me before, and you're gonna continue down the road of teaching us about state standing. That's... Go for it, but... No, this is more about judicial reasoning on the question that was asked. Okay. Thus, a suit could be blocked by one legislature who chose, for whatever reason, not to join the litigation. Such a result would place too high a bar on judicial resolution of constitutional claims. However, if a sufficient block is less than all legislators who voted for the bill, the injury cannot be characterized as institutional and must be viewed as personal to those who assert the claim. So the issue is, with respect to the question, is the standard of a state legislature passing a resolution to file the lawsuit, or a sufficient block of legislators to constitute a majority, is that required to bring the legislative participation claim? Do we allow individual legislators who disagree with the litigation to stop the individual legislator from bringing the claim to this court? And the consequence is, as I began my oral argument, is there'll be... not... it's too high a bar for judicial resolution of these important federal constitutional claims. It goes to the heart of where the... what the judiciary is for. The judiciary hears to hear claims under Article 3 to adjudicate to ensure that the government operates according to the Constitution. Do you require a state legislature to sue? So, to be fair, our job is to decide cases or controversies. Our job is not to provide advisory opinions on all constitutional questions. So, you know, we have this debate about what Coleman means and how it fits in with the court's current doctrine. Well, it would be very helpful for me. I view... I think the court is taking the road of case or controversy means the types of cases or controversies that were decided by judicial bodies at the time of the founding. And I have... I mean, you cite Coleman, but you don't cite any types of cases from the founding that suggest that federal courts or state courts or any type of courts got involved in this type of dispute between government actors about usurpations of their powers. Do you have any historical authorities that would help clarify the court's current debate about where Coleman stands, about judges actually deciding controversies like this? Just be... two state actors fighting over who... who has the power to do something under state... under the Constitution? You know, the Arizona case, which involved a state legislature bringing the lawsuit, unlike here, discusses Coleman's application in a legislative usurpation context. Proposition 106 in Arizona created a separate redistricting commission to resolve the issues. The U.S. Supreme Court found standing and ultimately found that the allocation of... My question is, okay, so we have Arizona legislature. We also have cases saying that's the entire legislature. And then we have Coleman, which was only half the legislature. And we have to reconcile these cases. And I would do my best to reconcile them in a way that fits with the original understanding of the Constitution. And so citing the cases back to me is not helpful. I'd want to know, as an original matter, do we think anything like this would have been litigated at the time of the founding in a court? Well, the election clause... I'm not aware of any cases before Coleman. But in Coleman, it was Article 5, the Constitutional Nullification Procedure. And it was, you know, a vote nullification case. The legislative usurpation that we're describing, that is the use of the Article 12, Section 2, citizen petition and referendum, don't involve the state legislature. When did that practice... Do you know historically when that practice began in any state? In any state? Yeah. Just historically, from the tradition? Well, I know from the Arizona, it's in the U.S. Supreme Court case. In the Arizona, it mentioned that it was part of the the founding of Arizona and how it approached things. So the 18, what, late 1800s? Right, but the point is that the election clause establishes the right for the state legislature to vote on election matters involving federal elections. The Michigan Constitution designates the state House and Senate as the legislature. Their members, the House and Senate, rules create rights for the individual legislators to vote on the bills. That is not creative, concocted, or invented. That's document-based pleading. And those are the personal rights of the state legislators. And so the issue really is, is does the state legislature need to sue when it's legislative participation? Do you need a block of state legislators to sue? Or is an individual state legislator enough? I think that's helpful. The red light's been on for a little bit, so you'll get your full rebuttal. Thank you. Good morning, Your Honors. Good morning again. Assistant Attorney General Heather Meingas on behalf of the state defendants. That a plaintiff must have standing is a foundational principle, and regardless of how interesting the merits of the case might be. What do we make of Coleman? I mean, one thing about Coleman that's a little hard to figure out is it's a deadlock. And so it actually isn't power. I mean, I guess I'm trying to figure out, you know, because his argument, if I were to try to pitch what he was trying to say, it would be something along the lines of, Coleman allows strong voting blocks. And we know how legislators work, and sometimes a voting block can be as dispositive as a 20-20 tie. So does Coleman allow us to go down that road? That's the thing I'm... because it's obviously not the legislature if it's 20-20. I don't think Coleman allows... I mean, to me this is not a Coleman claim at all, right? This is an Arizona State legislature claim, really, for all intents and purposes. I'm talking about the standing issue. Yeah, no, I get that. But that's really where we are, right? I think we have to go back and look at what is the perc... what is the injury that they're alleging here, right? Their injury is that they have lost, they've suffered a diminution or a loss of voting power with respect to, you know, election legislation. And that is not a personal injury. That was true in Coleman. That's true in Arizona. Coleman is ratification of a constitutional amendment. Each house has to do it separately, is the way it works. So Senate was not reliant at all on what the House was going to do in that state. It wasn't Nebraska. So I don't understand what you mean. We're supposed to look at what the theory of the underlying constitutional action is, why that makes a difference in these two cases. No, that's not what I mean, Your Honor. The point is, the case law is very clear that individual legislators cannot bring institutional power. Got it, got it. Very easy. Right, and that's what you mean. But why isn't a voting block suffice after Coleman? Well, there's no voting block here. What's the voting block? Eleven people. I haven't looked into it, but I assume his theory is this is a meaningful block. It probably... Not under Coleman or not under how Reins put... I mean, if you look at the Supreme Court's decision in Reins, it really put Coleman in a box, right? I think to get a Coleman claim, you have to have almost identical, a Coleman fact pattern. We don't have a sufficient voting block here who voted on a bill or a legislative proposal whose votes would have been effective, but not for the interference of, in that case, the executive branch, right? So I think Coleman is Coleman. Like, if you can't get into the Coleman box, you don't have a Coleman claim. They're not in the Coleman box. It's about ties. It's about ties? That's how you... It's about ties. Well, it wasn't... The tie was effective in Coleman, right, because it didn't pass. The tie didn't ratify the amendment, right? But a voting block could do the same thing. A voting block of 11 legislators. In the way of passage. In other words, if you're saying the injury is a tie because nothing happens, I'm not sure I agree with Coleman. I'm not sure I understand Coleman, but that's why it seems to give room for these arguments on the other side. If the tie is a cognizable injury, why isn't a voting block a cognizable injury? But the tie wasn't... The point of Coleman was it wasn't the tie. The tie, they would have won, right? These no votes would have carried the day, right, but for the lieutenant governor's vote in that case, right? So there would have been a victory, not a defeat. And that's what Coleman stands for. I think you've got to have a... You would have to have a situation where you voted on something and your vote is rendered meaningless by some sort of interference. In other words, you would have passed something or something would have been defeated. And that's not what we have here at all. I think Coleman is very limited to... There's no successful post-Raines-Coleman claims that they talk about other than the Pataki case, right? Or along those lines. And I think as far as trying to understand Coleman, I think the court in the Kerr v. Hickenlooper case, the Tenth Circuit case, I think had a good... Had sort of a good recitation or understanding of what... Of Raines and what Coleman meant. Go ahead. Tell me. Tell me. Just repeat. Well, I mean Coleman is still... Coleman really is a personal injury case where they had a personal vote. Their personal stake in that case for those 20 legislators were the fact that they voted and their votes were nullified if they were right on the law by the vote cast by the lieutenant governor. So that's where you still have to have a personal... So post-Raines and its interpretation of Coleman, you need to have a personalized injury, something different and apart from an institutional injury. And so this case is much more closely on standing, on standing, not on the merits, aligned with Arizona State Legislature, right? Because factually, that's exactly what we're talking about here, a constitutional amendment that's... Is the goal, by the way, it's not... This is for the other side, but I'm just curious if you have an opinion about this. Is the goal here to use this case to overrule Arizona? I assume that the goal of this case is to... Reconsider it. Yes, to expand standing principles. Oh, I thought... No, I was thinking the goal was to overrule Arizona on its view about initiatives vis-a-vis the legislature and elections. If we get to the merits, right? If we ever got to the merits. That's what I mean by goal. I'm talking about not... Very few people have the goal of moving the ball on injury and fact in Article 3. I don't know. I mean, those are very small cocktail parties, would be my suggestion.  But either way, that was not my question. My question is, ultimate goal of the litigation, from your perspective, it's to overrule the merits decision in Arizona. I think that would be the ultimate goal, right? Because that's really what's going to block their merits claim here, right? But I'm still talking about Arizona for standing purposes, right? Because factually, this is indistinct for standing, right? Yes, it was the legislature there, but what Arizona State Legislature confirms is the type of injury they're alleging here is institutional. And individual plaintiffs cannot bring institutional cases. And Arizona State Legislature relied on Coleman and said, this is akin to Coleman, but they called it an institutional injury. And so we know from the decision in Reins, from Arizona State Legislature, and the Virginia Delegates case, from multiple cases from this court, whether it's Crawford or Tennessee General Assembly or the Baird case, that individual legislators cannot bring claims based on institutional injuries, which is exactly what they're talking about here, which is a diminution or a loss of voting power, which is an injury that inures to the whole system. This is a slightly unfair question, so don't worry if you can't answer it. I'm just curious myself. Imagine the Coleman facts are that they actually had 41 senators, and one didn't show up for the vote. They were sick. So the tie is actually inaccurate. The 21st person would have been on the other side. Does that change anything? So in other words, they actually weren't anything – the only thing being nullified was nullification because of the randomness of someone being sick and not showing up. That's what made it 2020. Would that change it at all? I don't think so, Your Honor. I mean, I think Coleman is a strange case. It's certainly hard to say whether it would be decided the same way again. Reins didn't overrule it, but it really sort of put it in a box. So I think we're stuck with exactly sort of Coleman-esque facts where you have actual votes at issue here, which we don't have. We don't have an actual situation where these legislators voted on something, where they went and they proposed legislation contrary to the Constitutional Amendment, and somehow that vote failed because of the Constitutional Amendment. But I mean, that seems a little artificial because they could just tee that up. I mean, just talk to the chairman of a committee, committee of a vote, and then their vote doesn't carry the day. It's, quote, nullified. I don't know if it carries the day. Doesn't it seem artificial, whether there actually was a vote? I'd probably still argue they don't have standing, right? But it's closer to a Coleman situation, right, which we just do not have factually here, a Coleman situation. Again, it's, you have to look, what is the injury, for purposes of standing, what is their concrete, particularized injury? What is the injury here? The injury they are alleging is an institutional injury. That is what Arizona State Legislature said on almost exact facts, right? And so that institutional injury can only be brought by the legislature. And Hickenlooper, I think, is a good case to look at post-Arizona State Legislature because it's a very similar fact pattern, right? And Hickenlooper went back and reversed their issue on standing for the individual legislators there, walking through Arizona State Legislature, wrestling with Coleman, because at first they thought that the individual legislators there who were unable to, well, because of the Constitutional Amendment in the Hickenlooper case, said no new tax laws without a vote of the people, right? So that impacted their taxation and appropriations power, essentially. And so Hickenlooper first agreed with plaintiffs that those individual legislators had standing under circumstances because it was a little bit like Coleman with a nullification issue, right? You couldn't pass a vote, your vote would be meaningless because the Tabor Amendment in that case meant it failed without a vote of the people. But then CARE went back, the Supreme Court sent CARE back, right, to the Tenth Circuit, and CARE walks through Arizona State Legislature and Coleman and ultimately lands with those legislators in that case. It's just very similar to this case, did not have standing because what they're alleging is an institutional injury that can only be raised by the legislature itself, consistent with the existing... You know, one thing that's a little unfair about this is I really think this is bound up in the existing Arizona precedents. So it seems really unfair to ask a state that thinks that was wrongly decided on originalist grounds, whatever, but now you have to force a state to get a majority of the legislators to do something that's inconsistent with existing U.S. Supreme Court authority is the only way to challenge whether that precedent should stay. Doesn't that seem a little unfair? The Supreme Court doesn't seem to think... I mean, you're not going to get a legislature to do it. I mean, I guess you could because they could be just really exercised and want to put the case back on... We don't have any evidence in the record here that this legislature said no or that the legislature next session might not say yes. I think I'm right about the practical point. I understand it, Your Honor, but I mean, this is... The Judge Packerine's decision in this case was absolutely consistent with all of the case law. If anybody's wrong on this, the Supreme Court can correct it, right, because this court's bound by existing case law and its own Sixth Circuit precedents, which preclude a finding of standing in this case because this is not a personalized injury to these individual legislators. They are talking about the loss of voting power, which is an institutional injury that the courts have said these plaintiffs cannot... So do you think it would have mattered? What if the Michigan legislature had passed a law inconsistent with the initiative? Because they took the view that they were the legislature and the people weren't. If this law... Say this law is now on the books. Could, at that point, an individual legislator who voted for the law kind of defend it in court or seek a deck action that it's valid under the elections clause? Because then you'd have at least a law on the books. It seems like it would be closer to a Coleman-type situation, where there's been a vote that's arguably stymied by the existence of the Constitutional Amendment. We don't have that. Could an individual... I'm still not sure that that's not an institutional injury, right, because the legislature passed it as a whole. What if they had just simply alleged in their complaint that a majority of the legislature would pass this law that would contradict the initiative? Wouldn't that be enough to survive, at least standing at the motion-to-dismiss stage? I think it would be dependent, I guess, on how strong the allegations are. I think it would be completely speculative as to what a legislature might do.  But maybe that might be enough. So I don't think that is a concrete or sort of an imminent enough injury that we can speculate that the legislature will do something in the future. All right. Thank you very much. Thank you, Honor. The Sixth Circuit Injury and Fact Test is the invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical. Here the claim is limited to the Election Clause duties, rights, and privileges of individual state legislators, which is evidenced by the Election Certificate, House and Senate Rules, the Michigan Constitution, and the Elections Clause. This is distinguishable for the Virginia House of Delegates because there the Virginia House of Delegates was attempting to represent the state interests of the state. It never made these claims. It's distinguishable from the Tennessee case because that involved the spending clause in the Tenth Amendment. It's distinguishable from the Yaw case because of the fracking case involving a compact with the federal government. It's distinguishable from the Crawford case because a U.S. Senator was involved, not a state legislator, operating under the Elections Clause. In the Arizona Supreme Court case, which so-called creates this institutional interest, the key sentence is, close to the mark is this court's decision in Coleman v. Miller. So the institutional interest depended on the legislators having election certificates, being designated by the state constitution in Arizona, having the right to vote on bills, relying on the U.S. Constitution Election Clause. Suppose the Michigan legislature did pass a law inconsistent with the initiative outcomes on the voting procedures. Do you think, because Arizona legislature interpreted the word legislature to include the people, do you think an individual voter who had voted on the initiative would have standing to challenge the law as inconsistent with the initiative? Because the individual voter's legislative power has been usurped? Not in federal court because the legislator argument... But your argument presumes that legislature means legislature as, maybe I understand it, but the Supreme Court didn't. The Supreme Court understood it as just legislative power wherever it rests. And I just don't understand why your theory would not allow any individual voter whose vote has been undermined to bring suit, because they are part of the legislature under Arizona legislature. Under the U.S. Supreme Court case, Proposition 106, the specific question before the court was the legislative body created by the Arizona Constitution. Was a lawmaking body sufficient to be a legislature under the Constitution? It did not consider the ratification process. And so here we're challenging the ratification process because there's a procedure that includes a state legislature that was not used. And so Section 1 of Article 12, state legislature proposes. So the state legislature is completely excluded from that process. So that's the first invasion of the state legislator's prerogatives. The second usurpation is the consequence of the enacted constitutional amendment superseding the state law. Both are referenced in the Constitution. So in the Arizona case, there was a legislative body created by the state constitutional amendment. That wasn't the case here. In fact, that issue isn't presented in this case. Here, the state constitutional amendment directly regulates the place and manner of federal elections. And so there's no legislature involved. They could have used the other procedure. I think you want to sue the U.S. Supreme Court. Just as in Coleman, the lieutenant governor took away the power of the 20, the U.S. Supreme Court in Arizona took away the legislator's power. That's what happened. That's the upshot of that decision. Well, actually, not when it's read closely. And remember, the state legislature brought the claim in Arizona, and individual state legislators didn't have to. And so then we have a different case here in Michigan. The Michigan state legislature didn't bring the claim. So now, in my client's view, individual state legislators have to. That goes back to my initial question about labeling. And I noticed, remember I read the Pataki quote saying, well, if we decide that a state legislature or a sufficient block of legislature is so high to prevent these cases coming to federal court, or coming to court, I should say, then we should label the individual state legislator. Something less than that block, like an individual, as suffering a personal injury. So the judicial reasoning can drive the labeling. So if you're worried that, oh, in Michigan, this case hasn't been brought, and these are big asserted violations of law, then we would say, oh, an individual state legislator has standing to bring a legislative usurpation claim, because it's best for our society that the organs of government comply with the federal constitution. Thank you very much. Appreciate both of your briefs and arguments. The case will be submitted.